THE PRESIDENT AND DIRECTORS OF THE BALTO. FIRE INS. CO., *vs.* BOUDINOT S. LONEY ET AL., AND BOUDINOT S. LONEY ET AL., *vs.* THE PRESIDENT AND DIRECTORS OF THE BALTO. FIRE INS. CO.

FIRE INSURANCE POLICY, CONSTRUCTION OF.—Where a policy of insurance provides that, "goods held in trust or on commission are to be declared as such, otherwise the policy will not extend to cover such property," and it appears that the insured have obtained their insurance without making any specific statement of the nature of their interest in the goods destroyed; HELD:—

1st. That the insurer has a right to limit the extent of the risk by such condition.

2nd. That a knowledge of that condition by the insured must be presumed from their acceptance of the policy, and it will have the effect of limiting the risk to the goods which belong to them.

Where the policy is entirely consistent with the terms of the application, free from ambiguity, and susceptible of a consistent construction in all its parts, and if there be a mistake in the insurance effected it be not attributable to the insurer, the Court will not look beyond the terms of the policy in ascertaining its meaning and legal effect.

Loney and Co. were insured in a Baltimore Company on their own goods, and in sundry foreign companies on their own goods and goods held on commission. The policy in the first company contained a clause that "the insured shall not in case of loss or damage be entitled to demand or recover on this policy any greater proportion of the loss sustained than the amount hereby insured, shall bear to the whole amount of the several insurances." The whole insurances were insufficient to cover the value of the goods lost. The Baltimore Company refused to pay more than the proportion of the losses as stated in the above clause; HELD, that the foreign policies were not within the effect of the covenant relating to other

insurances, and that the Baltimore Company is not entitled to any abatement of its liability on this policy by reason of them.

WAIVER, INTEREST.—A policy provided for the payment of losses within sixty days after the same should be ascertained and proved. The loss was proved and demand of payment made within the time limited. The loss was also admitted by the insurance company, which offered payment of what it assumed to be the amount of its liability, but refused payment of the full amount of the insurance; HELD: That the condition as to the time of payment was waived, and that the sum for which the insurers were bound, became due and recoverable with interest from the date of the demand.

CONTRIBUTION.—The right to contribution is based upon the concurrence of the policies, and the necessary incident of its existence is, that the several insurers should be bound with equal certainty, and in the same sense for the same loss.

CROSS-APPEALS from the Superior Court of Baltimore City :

This was an action brought on the 28th of August 1857, by Loney and Co., against the Baltimore Fire Insurance Company, upon a policy of insurance issued by said company, on the 27th of August 1855, which was continued by renewals to July 1st, 1857. This Court in its opinion having concisely stated all the leading facts and points raised by the proceedings in the cause, it will be only necessary here to present portions of that statement in detail.

*Exception.* The plaintiffs proved that when the policies sued on were issued and for several years before, they were largely engaged in business as commission merchants in Baltimore—having occasionally on hand small quantities of their own goods, but for the most part, selling and having on hand goods consigned to them on commission, which was specially their business, and these facts were generally known in the City of Baltimore;—that by their course of business with their customers, and especially with those by whom the consigned goods destroyed by the fire were so consigned to them, they received $2\frac{1}{2}$ per cent. commission for sale, $2\frac{1}{2}$ for guaranty, and 1 per cent. for insurance and expenses—being bound by their said course of

dealing to insure the goods so consigned;—that they were likewise accustomed to make advances on consignments of goods, and had advanced on the consigned goods destroyed by fire as aforesaid, $39,903.39, previously to said fire;— that after said fire, they duly accounted to their respective consignors for the goods so destroyed, at the prices set forth in their statements to the defendants—deducting therefrom the amount of their said advances and commissions.

They also proved by George B. Coale, that he had been, for many years, connected with the business of insurance, having acted; and then acting, for various companies, and among others for some of those by whom the out of town policies in this case were issued, that he knew, and had, for many years known, the plaintiffs as engaged extensively in the dry goods commission business, and supposed they were generally so known to be in the City of Baltimore. That if he had been called upon to insure them under the applications hereinbefore referred to, he would have understood from their occupation and business, and the large amount of their insurances, that they intended to insure not only their own goods, but also the goods held on consignment, it being the general practice for commission merchants in Baltimore to insure goods held on consignment, and to have quanties of such goods in store.

The said witness further testified, that on the assumption that the defendants were not liable on any goods but the plaintiffs' own, and that the defendants were entitled to contribution from the other policies by which the plaintiffs were insured, as well on goods held on commission as on their own goods, the proper mode of adjustment, and one which he had adopted as underwriters' agent, would be as follows: Inasmuch as the policies blending both classes, do not designate the proportion insured on each, and assuming that the defendants were only entitled to contribution from the amount underwritten on the classes of goods which they had insured, it was necessary to ar-

rive at the latter amount by an arbitrary rule; the fair rule seemed to be, to assume that the plaintiffs intended to insure each class of goods in the ratio which its amount bore to the amount at risk. Thus if the plaintiffs' own goods were of equal value with those held on commission, that one-half of each policy, blending both classes, was intended to apply to each.

The plaintiffs further proved that the companies by which the blended policies aforementioned were underwritten, paid the several amounts so by them underwritten, in gross, without any adjustment or contribution.

The plaintiffs further proved by their book-keeper, Mr. Anthony, that they usually had on hand, comparatively small quantities of goods of their own, for sale, and the amount which they happened to have of their own at the time of the fire aforesaid, was unusually large.

It was admitted by the defendants, that if the plaintiffs had declared, in their several applications, or otherwise, to the defendants, that they desired to be insured on goods held in trust or on commission, the defendants would not have regarded that fact as material to the risk, but would have still insured them at the same rate of premium, which they asked, and received upon the policies in controversy.

The plaintiffs then offered six prayers, (all of which, except the sixth, were rejected,) of the following effect, viz:

1st. That, if at the time of issuing the policies sued on, the plaintiffs were, and for a long time theretofore had been, and down to the happening of the loss continued to be, commission merchants in the City of Baltimore, whose business it was to sell goods sent to them on commission, and were extensively and almost exclusively engaged in the sale of such goods, and were commonly and publicly known so to be, and it was the custom of commission merchants in good business in Baltimore, to have on hand, in store, large quantities of goods sent to them; to be sold on commission, and the defendants at the time of issuing said policies, had knowledge of said facts, and received the

plaintiffs' applications for insurance with such knowledge; and prepared and issued the policies in suit accordingly; and in reference thereto, and without requesting any information further, in regard to the ownership or character of the goods on which insurance was so applied for, and if the plaintiffs in good faith sought and desired to be insured upon their said applications, as to all the goods which were, or might be in said warehouse, and the defendants knew that fact, and did not, nevertheless, inform the plaintiffs, or suggest to them, that the policies so issued were not intended to cover, and would not be held by the underwriters as covering any goods said plaintiffs might hold on commission or in trust, and have in said warehouse, and if said goods so held in trust or on commission, would not have been regarded by the defendants as a more hazardous risk than goods belonging to the plaintiffs absolutely, and would have been insured by the defendants as well, at the same premium, then the whole of the goods held by the plaintiffs in said warehouse, at the time of said fire, whether absolutely their own, or held in trust or on commission, were covered by the policies in suit.

2d. That even if the defendants had not knowledge of said facts, the goods on which they had a lien for commissions and advances, are to be regarded, for the purposes of these suits, to the extent of said lien, as their own goods, and covered by the defendants' policies.

3rd. That the plaintiffs had the right to apply the amount received by them from the out of town policies; first, to the goods held by them on commission, and not covered by the amount of their advances and commission; secondly, to the amounts covered by said advances and commissions; and that the plaintiffs were entitled to recover in these suits, the balance, if any, of their said advances and commissions, together with the value of the goods owned by them absolutely, provided the same did not exceed the amount of the policies sued on, with interest.

4th. That if the plaintiffs were not entitled to the in-

DECEMBER TERM 1862.	25

Balto. Fire Ins. Co., *vs.* Loney, et al.

structions asked for as aforesaid, the mode of adjustment stated by Mr. Coale was the proper one for apportioning the losses.

5th. That on the admissions stated in the first prayer, and the hypothesis of the second, the plaintiffs were entitled to recover the full amount of the policies in suit, if the loss of the plaintiffs on the value of the goods absolutely their own, together with their commissions and advances exceeding the whole amount underwritten by said policies.

6th. If, however, the Court should not adopt the rule of compensation set up in the last preceding prayer, that the plaintiffs were entitled to recover the value of the goods absolutely their own, to be divided between the defendants in the ratio of the amounts of their policies respectively.

The defendants also offered three prayers, to the following effect.

1st. If the policies were made on the basis of the applications of the plaintiffs, and the plaintiffs did not, at the time of making said applications, or afterwards, declare to the defendants that the goods or any part of them specified in said application were held by them in trust or on commission, that the policies did not cover goods held on commission or in trust.

2d. That on the hypothesis of the first prayer, the defendants' policies did not cover goods held on commission, although it may have been generally known in the City of Baltimore, that in the course of their business, they generally had on hand large amounts of goods so held.

3rd. That if $16,855.02 of the goods destroyed by fire, and no more, belonged to the plaintiffs, and the out of town companies were solvent, each defendant, was responsible on its policy, only in proportion to the amount of its subscriptions as shown by the respective policies.

The Court below, (MARTIN, J.,) granted the defendants' 1st and 2nd prayers, and rejected the third.

The Court also assigned the following reasons for its refusal of the defendants' third prayer, to which, as well as to said refusal, the defendants excepted :

4	v. 20.

In deciding that this is not a case for apportionment, I place my opinion upon the ground that the insurance affected by the plaintiffs, in the Alliance and other out of town companies, was a compound insurance, not affected upon the individual and private goods of the plaintiff for an ascertained sum, and then specifically for an ascertained amount upon the goods held by the plaintiffs on commission, but on the blended stock of the individual goods and the goods held on commission by the plaintiffs, without any specific sum being insured on each class or parcel of goods specifically.

That a case of this description is not a case for apportionment, within the clause on that subject in the policy of the defendants, is, I think, clear upon principle, and is directly affirmed by the Superior Court of New York, in the case of *The Howard Insurance Company vs. Scribner*, 5 *Hill*, 298.

The plaintiffs excepted to the refusal of their 1st, 2nd, 3rd, 4th and 5th prayers, and to the granting of the defendants' 1st and 2nd prayers.

The verdict of the jury was for the plaintiffs. Both plaintiffs and defendants appealed.

The cause was argued before BOWIE, C. J., and GOLDSBOROUGH and COCHRAN, J.

*Wm. Schley,* for the Insurance Companies:

In support of the appeals, *by the insurance companies*, the following points will be maintained:

I. The plaintiffs' 6th prayer ought to have been rejected.

(1st.) It claimed interest from 7th May 1857. The fire occurred 14th April 1857. By the 9th condition of the policy of the Baltimore Fire Insurance Company, the loss is payable *within* 60 *days*, after the loss shall have been ascertained and proved. Computing, therefore, even from the very day of the fire, the term of 60 days would have extended to 13*th June* 1857; computing from the affidavit

of proof of loss, 18th August, the term of 60 days would have extended to 17th October. Even if the denial of liability to the extent claimed, on the 7th May, was improper, still the time of *payment*, as fixed by contract, was not thereby accelerated. If the *principal* was not due on the 7th May, *interest* could not accrue from that day. *Allegre vs. Ins. Co.*, 6 *H. & J.*, 413. *Newson's Adm'r vs. Douglas*, 7 *H. & J.*, 417.

(2nd.) The 6th prayer refers to the 5th prayer for its hypothesis; and the 5th prayer refers to the 1st and 2nd prayers, which are dissimilar; and, in some respects, repugnant. It is impossible to decide, on what precise hypothesis of facts, the prayer was based.

(3rd.) But, apart from minor objections, the 6th prayer is essentially wrong. It denies to the defendants *any* right of contribution, on *any* basis whatever, from the other insurances. The learned Judge granted the prayer, in reliance on the case of the *Howard Ins. Co., vs. Scribner*, 5 *Hill*, 298; a case, which has been cited, occasionally, in other Courts, but has never been followed or adopted in any reported case, and has been denounced as unsound. It declares that the covenant, limiting the liability of the insurer to a mere *proportion* of the loss, is inapplicable and inofficious, where there is another insurance, covering the same property, but covering, also, additional property. Identity of the subject—without *more* and without *less*—identity *in omnibus*, precise and exact—is made the criterion of contribution; the *sine qua non* of the occurrence of the *casus fœderis*. In our Court, in the case of *The Associated Fireman's Insurance Company, vs. Assum*, 5 *Md. Rep.*, 165, its authority was disregarded; and the principle of the decision, in that case, is directly the other way.

The companies will insist, that the *other* insurances covered the goods of the assured, belonging to them, as their own property, notwithstanding that said other insurances, *also*, covered property held in trust or on commission. Covering *both* classes of property, those other insurances

-covered *each* class. If property, belonging to either class, was destroyed by fire, the assured was entitled to indemnity for such loss, from those other insurances, even if no part of the *other* class was injured. The risk assumed was not limited to a blended *loss.* Those *other* insurances covered *every article* of goods in the warehouse, whether belonging to the assured, as *their own* property, or held by them *in trust.* The covenant is unambiguous and comprehensive; plainly embracing "*all* merchandise—their own or held by them, in trust or on commission."

(4th.) It is obvious, that if the defendants' third prayer ought to have been granted, then the plaintiffs' 6th prayer ought to have been rejected. But, even if the defendants' 3rd prayer was properly refused, still, if the theory of contribution on the basis of a double proportion, suggested by the witness, Coale, and affirmed by the plaintiffs' 5th prayer, was the true rule, then the 6th prayer ought not to have been granted.

II. The defendants' *third* prayer ought to have been granted. The covenant is plain and unambiguous. The *casus fœderis,* making a proportionate liability, the basis of adjustment has occurred. The *premises* insured, by the defendants' policy, mean the assured's *own* goods. Now the *other* insurances clearly cover the defendants' own goods, notwithstanding those other insurances also cover goods held on commission. The policy of the defendants, and the *other* policies, therefore, cover the same subject;— the assured, whose interest is covered by the policy, have *the same interest* covered by the said *other* insurances; and, in all, the risk taken is the same, to wit: against loss or damage by fire. Suppose that the goods destroyed had -been only those belonging to the assured in their *own* right, and further, that the said *other* insurances were the only insurances covering the same, would not the assured be entitled, as against said other insurances, to indemnity, notwithstanding said other insurances also covered property, held on commission? And are not said other insurances

still liable, notwithstanding the risk assumed by the defendant? And if this be so, are there not several insurances on the same premises?

The following authorities will be relied on in support of this position. *Angell on Fire Ins.*, secs. 26, 88. *Whiting vs. Independent Mut. Ins. Co.*, 15 *Md. Rep.*, 297, and cases there cited. *Storer vs. Elliott Ins. Co.*, 45 *Maine* 179. *Haley vs. Dor. Ins. Co.*, 1 *Allen, Mass.*, 536. 1 *Phil. on Ins.*, sec. 366. 2 *Id.*, sec. 1263, note 2.

On the appeals *by the assured*, the following points will be maintained, on the part of the insurance companies:

III. The plaintiffs' 1st prayer was properly rejected. The policy of the defendants is to be construed by its terms. If not in conformity with the actual contract, relief should be sought in equity. Extrinsic facts, where there is no ambiguity, cannot vary the construction of the written contract. Even if facts had been given in evidence, which would afford ground for an action of *deceit*, or would justify an imputation upon the contract, as originating in *fraud*, still, such facts could not avail, in an action, founded exclusively on the contract, and having no other basis. The manifest meaning of the contract is, to limit the premises insured, to goods in which the assured had an interest as proprietors. *Carpenter vs. Providence Co.*, 16 *Peters*, 496, 506, 509, 500. *Parks vs. General Ins. Co.*, 5 *Pick.*, 34, 36. *Col. Ins. Co., vs. Lawrence*, 2 *Peters*, 25, 48, 49. 2 *Marshall on Insurance*, 789. *Angell on Insurance*, sec. 74, and note 4, page 115. *Halhead vs. Young*, 36 *Law & Eq.*, 109. *Hughes vs. Tindall, Id.*, 415. *Glendale Woollen Co., vs. Protection Ins. Co.*, 21 *Conn. R.* 19.

The same views and authorities apply to the plaintiffs' 2nd, 3rd and 5th prayers.

IV. The plaintiffs' 4th prayer affirms the propriety and application of the rule of adjustment, as stated by Coale, in his testimony. In case of general average, in marine insurance, adjustment, on this principle, has been commended as just. But where there is a *fixed* amount of insur-

ance on goods, (embracing goods belonging to the assured, himself, and goods held by him on commission;) without any apportionment, it is an insurance for its *full* amount, on each class; and the insurer takes the risk for the full amount, on each class, if loss of one class should happen to such amount. Abatement, from contribution, is a qualification of the consequences of such liability. Restriction, in case of loss of goods of both classes, to an amount not exceeding the amount insured, is another incident, qualifying the consequences of liability. But the construction of the contract does not depend on the actual or possible consequences; but upon the meaning and intention. If the proposition, asserted in the last preceding point, is not true, then the doctrine of the plaintiffs' 5th prayer would be correct. The difficulty of ascertaining the contributory amount of the *other* insurances results, as a consequence, from the confusion, introduced by the assured; and which ought not to enlarge the responsibility of these companies. It cannot affect the principle of contribution; although it may embarrass adjustment, in practice.

*R. Johnson* and *S. Teakle Wallis*, for Loney & Co.

1. Insurance is recognized by all writers as preeminently a contract of good faith, *uberimæ fidei.* Policies ought, without too literal adherence to the language of them, to be held binding upon underwriters in the sense, and to the extent in which they knew at the time of issuing them, the assured understood them. It is immaterial *how* the defendants knew the manner in which the goods were held—if they actually *did* know it. If an underwriter looks at a house, and misdescribes it in the policy which he prepares, it is protected nevertheless. These policies, issued with a knowledge of what the plaintiffs meant to insure, were either intended by both parties to cover the goods held on commission, and if so meant, ought to be so construed—or the defendants, in bad faith, which the plaintiffs are unwilling to impute to them, had in view and concealed from

the plaintiffs the condition requiring goods held on commission to be described as such, and purposely described them otherwise. If the latter, they ought not to be allowed the benefit of the condition so fraudulently concealed. An underwriter who insures a ship, which he knows has arrived, is compelled to pay back the premium, although nothing in the policy imposes on him such an obligation; because good faith requires it. Effect can only be given to the same principle here by nullifying the condition, in reference to which the bad faith was practised, or by allowing to the information, which the defendants are assumed to have had, the same weight as if it had been embodied in the written applications. *National Fire Insurance Company vs. Crane,* 16 *Md. Rep.,* 260. *Perry County Insurance Company vs. Stewart,* 19 *Penna. R.,* 45 and 46. *Howard Fire Insurance Company vs. Bruner,* 23 *Penna. R.,* 50, 56 and 57. *Wilson vs. Genessee Mutual Insurance Company,* 16 *Barbour, N. Y. Sup. Ct.,* 511, 512, &c. *Marshal vs. Columbia Insurance Company,* 7 *Foster, N. H.,* 157. *Franklin Ins. Co., vs. Hewitt,* 3 *B. Monroe,* 231. *Ætna Insurance Company vs. Jackson,* 16 *B. Munroe,* 242, 243, &c. *Duncan vs. Sun Ins. Co.,* 12 *La. An. Rep.,* 486.

2. Even if the defendants had not knowledge of the facts relied on in the first prayer, the goods on which the plaintiffs had a lien for commissions and advances, were, within the meaning of the policies, to the extent of such lien, their own goods. *Franklin Fire Insurance Company vs. Coates & Glenn,* 14 *Md. Rep.,* 285. *Russel vs. Union Insurance Company,* 1 *W. C. C. R.,* 409. *De Forrest vs. Fulton Fire Insurance Company,* 1 *Hall N. Y.,* 84. *Lee vs. Barreda,* 16 *Md. Rep.,* 198 and 99. *Mut. Ins. Co., vs. Deale,* 18 *Md. Rep.,* 47.

3. The policies, by their language, insured the plaintiffs from all loss on the goods in question. They are not so insured unless they are fully indemnified for all they would have made out of them; at least to the full extent of those belonging to them absolutely, and of their advances and

commissions on those consigned. But, for the condition in reference to goods held on commission, the policies would have covered the interest of the consignors as well as consignees. That condition was only intended to guard against liability for the interest of strangers, of whose integrity the underwriters knew nothing. The plaintiffs were as much interested in protecting the consigned goods, to the extent of their claims against them, and their personal integrity was as good a guarantee therefore, as if they were their own absolute property. *Waters vs. Monarch Ins. Co.*, 85 *E. C. L.*, 870. *De Forrest vs. Fulton Fire Ins. Co.*, 1 *Hall*, 84. 1 *Arnould on Ins.*, 246, 247. 2 *Am. L. Ca.*, 575. *Stitwell vs. Staples*, 6 *Duer*, 63. *Same case*, 5 *Smith*, 401.

4. The plaintiffs were entitled to apply the amounts received by them from other companies, whose policies covered two classes of goods, to that class not covered by the defendants' policies, and the Court ought so to marshal them as to make all the policies together cover, as far as practicable, the entire loss. That contribution from "blended," or "non-concurrent policies," as they are called, is not allowed, when the effect of it would be to leave any part of the loss unpaid. The insured ought to suffer no loss so long as there is a specific policy unexhausted. *Insurance Monitor*, 111, 112. *Kane vs. Commercial Ins. Co.*, 8 *Johnson*, 229. *Bousfield vs. Barnes*, 4 *Campbell*, 228. *Minturn vs. Columbian Ins. Co.*, 10 *Johnson*, 75. *KcKim vs. The Phœnix Ins. Co.*, 2 *W. C. C. R.*, 89. 1 *Phillips on Insurance*, secs. 367, 368, 124.

5. The clause in reference to apportionment of losses among different companies, like the "American Clause" in marine policies, is only applicable to cases of partial loss, or of over insurance; not to a case where all of the policies together amount to less than the loss sustained. 2 *Philips on Insurance*, sec. 1263. 2 *Am. L. Ca.*, 651. 1 *Philips on Insurance*, 367 and 368.

6. The out of town policies, insuring a gross amount on

the plaintiffs' own goods, and those held on commission, without specifying the amount intended to be insured on each, were not such as entitled the defendants to an apportionment of the loss with respect to them, and the defendants were therefore bound to the same extent as if such other policies had not been in existence. *Howard Ins. Co., vs. Scribner,* 5 *Hill,* 298.

7. That if these be proper cases for apportionment, Coale's mode of adjustment was the proper one. *Whiting, use of Sun Mutual Ins. Co., vs. Independent Ins. Co.,* 15 *Md. Rep.,* 297.

8. Has interest been allowed from the proper period? Upon the positive refusal of the insurance company to pay the loss, the plaintiff, the insured, had the right to sue, viz: on the 7th of April 1857. If the contract was such as would at law bear interest, the right to claim interest arose simultaneously with the right to demand the principal. The question of interest is ▮▮ for the jury. *Newson vs. Douglas,* 7 *H. & J.,* 453. A minor is entitled to claim interest from the time when the guardian was bound to pay the principal. *Fridge vs. State,* 3 *G. & J.,* 117. *Dennison vs. Lee & Wife,* 6 *G. & J.,* 385, 386, affirms the case of *Newson vs. Douglas.* When the demand was made, the Baltimore Company offered to pay, but refused to pay more than the proportion of the insurance assumed by them to be the extent of their liability. If this offer had been accepted, Loney & Co. would have sustained a heavy loss. *Cui bono* to have waited for the expiration of the sixty days? Under the case of *Allegre vs. Ins. Co.,* and *Ins. Co., vs. Coates & Glenn,* we were entitled to sue and claim interest at once.

The Court would not send the case back if they should disagree with us on this point.

COCHRAN, J., delivered the opinion of this Court:

This suit was brought on a policy of insurance, issued by the appellant on the 27th of August 1855, and continued

by successive renewals to the 1st of July 1857, by which the appellees, as co-partners, were insured to the amount of $5,000 against loss by fire on goods contained in the 3rd story of a brick warehouse on Hanover St., in the City of Baltimore. The policy contains a condition that it should not cover goods held in trust or on commission, unless they were so declared, and also clauses providing that other insurances on the same property should be endorsed upon it; and in case of such other insurance and of subsequent loss, that the appellees should not be entitled to demand or recover any greater portion of the loss or damage sustained, than the amount thereby insured should bear to the whole amount of the several insurances effected? On the 25th of December 1855, the appellees obtained another insurance on the same goods to the amount of $10,000, afterwards increased to $15,000, by a policy containing the same clauses and conditions, issued by the Fireman's Insurance Company of Baltimore. The property insured was subsequently removed, by permission of that company and the appellant, to No. 35, S. Charles St. Prior to the 14th of April 1857, the appellees had affected, and then held, in addition to these insurances, six other policies for an aggregate amount of $65,000, issued by foreign companies, containing clauses requiring goods held on commission to be so specified, and in which the goods insured were substantially described as their own, or held by them for sale on commission. On the date last mentioned, the stock of goods amounting in value to $88,113.38, on which these several insurances were obtained, was destroyed by fire. A portion of the goods amounting to $16,855.02, belonged to the appellees, and the remainder, valued at $71,258.36, on which they had a lien for commissions and advances to the amount of $36,909.39, were held by them for sale on commission. The loss was $3,113.38 in excess of the whole amount of insurance, and the portion covered by the foreign policies was paid without reference to apportionment or contribution, leaving the balance of the loss $23,113.38

to be satisfied by the policies of the two Baltimore compa-
nies, to the extent of their respective liabilities.   The con-
ditions of the policy as to preliminary proof, were compli-
ed with, and a demand made for payment of the whole
amount insured by it on the 7th day of May 1857; but the
appellant, contending that its liability was limited to loss
on the appellees' own goods, and proportional thereon to
the aggregate amount of all the policies, offered, in satis-
faction thereof, to pay the sum of $991.13, which the ap-
pellees refused to accept.   Evidence was offered at the trial
without exception, showing that the appellees were Com-
mission Merchants chiefly engaged in selling goods con-
signed to them for sale on commission, that they were
generally known to be so engaged, and the custom of such
merchants, of keeping large quantities of commission goods
in store, and also tending to show, that the appellant re-
ceived the application for this insurance, and issued this
policy with a knowledge of these facts.

Several prayers, involving the construction of the policy,
were offered on both sides, all of which depend on the de-
termination of two questions: 1st, as to the extent of the
risk covered by the policy; and 2nd, as to the amount of
the appellants' liability upon it.

The appellees contended, on the hypothesis that the ap-
pellant knew their application was intended to be for in-
surance on all the goods destroyed, both their own and
those held on commission, that the policy should be so con-
strued as to give effect to that intention; or in other words,
that the extent of the risk underwritten should be ascer-
tained from that fact, and not from the terms of the policy.
The rule presented in this proposition, we think, can-
not be applied here.   The authorities referred to in sup-
port of the construction sought, present facts so far differ-
ent from those in this case, as to involve other principles.
In all of them the construction turned either upon the
meaning of terms, which by usage or custom had acquired
a particular sense, or on evidence that the insurer, after a

full disclosure of facts material to the risk, and in viola-
tion of an obligation implied therefrom, neglected to in-
sert in the policy such a reference to those facts as was es-
sential to its validity as a contract of insurance. Parol
evidence was admitted in one class, not to change or vary
the contract, but to explain the meaning of the terms used,
and in the other to prevent the insurer from obtaining the
advantage of a contract, which, through its default, would
otherwise have been without obligation and void.

The policy in this case is entirely consistent with the
terms of the application, free from ambiguity, and suscep-
tible of a consistent construction in all its parts, and if
there was mistake or error in the insurance effected, it does
not appear to be one attributable to the appellant, nor such
as to authorize us to look beyond the terms of the policy in
ascertaining its meaning and legal effect. We think it
cannot be excepted from the operation of the general rule
requiring written contracts to be interpreted by their own
terms, without regard to extrinsic facts. *Mumford vs.
Hallet*, 1 *Johns.*, 439. *Mellen & Nesmith vs. National Ins.
Co.*, 1 *Hall*, 452. *Phil. Ins.*, 47, 319.

The appellees appear to have obtained this insurance
without making any specific statement of the nature of
their interest in the goods destroyed, and had there been no
express condition to the contrary, their interest in the
goods held on commission, might have been covered by the
policy, for upon that state of fact, the material question
would have been, whether the failure to inform the insurer
that the goods were held on commission, would have affect-
ed the risk, and the admission, that the communication of
that fact, would not have changed the rate of premium,
might have been relied on as concluding it. But that is
not the question here. This policy expressly provides that
it was not to cover goods held on commission unless they
were so declared, or as we understand it, so expressed as
to appear, in some form, in the description of the goods in-
tended to be covered by it. The right of the insurer, to

limit the extent of the risk by that condition, cannot be doubted. *Phillips vs. Knox County Ins. Co.*, 20 *Ohio*, 174. *Briehta vs. Lafayette Ins. Co.*, 2 *Hall*, 372. 2 *Am. L. Ca.*, 642. And as we must presume, from the acceptance of the policy by the appellees, that they had knowledge of that condition, we think it should have the contemplated effect of limiting the risk to the goods which belonged to them.

The next inquiry is as to the amount of liability on the policy, for the loss sustained on those goods. As we have before stated, the appellees held seven other policies, six of which, issued by foreign companies, covered the goods owned by them as well as those held on commission, on blended risks to the amount of $65,000, the remaining one for $15,000, issued by the Fireman's Insurance Company of Baltimore, covering their own goods only. There is no question in regard to the latter policy, but as the others covered the goods of the appellees, although blended in the risk with those held on commission, the appellant insists that they are insurances within the meaning and effect of the covenant relating to other insurances; and, therefore, that it is not liable for any greater portion of the loss on those goods, than the amount insured on this policy bears to the aggregate amount of all the policies. In considering this proposition, it is proper to observe that the contract of insurance is one of indemnity, intended to protect the insured from loss, to the amount of the risk assumed, whether it be on one or several policies, and in general, that the provisions of the contract are favorably construed for the insured in furtherance of that principle.

The covenant in this policy limiting the liability upon it to a share of the loss in proportion to the amount of all the policies, was not intended to impair the right of the appellees to the full indemnity which would otherwise be afforded by them, but to ascertain the amount of the appellant's liability, subject to that right, by an apportionment of the loss among such of the insurers of the same

goods, as by the terms of their contracts should stand in the relation of co-sureties for any loss upon them. To establish that relation the policies should cover distinct and specific risks on the same subject, and in that sense constitute a double insurance, upon which, without the covenant in question, the liabilities of the several insurers, except as to the differences in the amounts underwritten, would be identical, and their rights to contribution reciprocal. The right to contribution is based upon the concurrence of the policies, and the necessary incident of its existence is that the several insurers should be bound with equal certainty, and in the same sense, for the same loss. *Lucas vs. Jefferson Ins. Co.*, 6 *Cow.*, 635. *Angel Ins.*, 134, 135. As we understand the authorities, this covenant relates only to policies which constitute a double insurance, or in other words, it contemplates only such insurances as fix upon the insurers liabilities for this loss, which the insured could not resort to for the satisfaction of other losses, and the question here is, whether the foreign policies were insurances of that character. The loss of the appellees, on the goods held on commission, exceeded the whole amount of their insurance on those policies, and if the covenant relating to other insurances be permitted to have the effect claimed, it is obvious that the right of the appellees to indemnity upon them, would be defeated to the extent of the apportionment to them of the loss sustained on their own goods. Those policies, as we have seen, covered both classes of the goods without any specific apportionment of the amounts insured to either, and the application of them under the covenant to one class only, in derogation of the right of the insured to indemnity for loss on the other, could be effected only by an arbitrary restriction of the scope and terms of the policies.

The covenant proceeds on the theory, that the insurers are to be discharged from some portions of their respective liabilities by an apportionment of the loss to the several policies. In that respect, it proposes a mutual and com-

mon advantage to all the insurers affected by it, entirely consistent with the protection of the insured, and there is no apparent reason why it should be permitted to have effect upon other insurances, when from the nature of the case, the common advantage contemplated by it becomes impossible. An apportionment to the foreign policies of the loss on the goods covered by this policy, without any reciprocal operation in the way of releasing the foreign insurers from any portion of the amounts of their several liabilities, would effect a disproportionment of the risks to the rates of insurances on the respective policies by a practical reduction of the appellant's liability.

In that aspect of the case, the appellant alone would derive the benefits of a condition intended to operate for the common advantage of such other insurers as might be affected by it. It cannot be pretended in that view, that the the appellant and foreign insurers, were bound with equal certainty and in the same sense, for the loss on the appellees' goods, or that there was any mutuality in their relations and rights, as insurers of the same subject. We do not wish to be understood as saying, that the insurers on the home and foreign policies could under no circumstances have been equally bound and liable as co-sureties for that loss, for had the loss on the commission goods been less than the amount of insurance on the foreign policies, it might well be said that the excess of that insurance would have been applicable to the loss insured against by the home policies, and the liabilities and rights of the foreign insurers to the extent of that excess, identical with those of the home insurers. But in this case the loss on the commission goods was sufficient to exhaust all the policies covering them, and as the insurers on the home and foreign policies, in view of the right of the insured to full indemnity, became subject to different liabilities by the loss as it accrued, we think the foreign policies were not within the effect of the covenant relating to other insurances, and that the appellant is not entitled to any abate-

ment of its liability on this policy by reason of them: *Haley vs. Dorchester Mutual Ins. Co.*, 1 *Allen*, 536. *Howard Ins. Co., vs. Scribner*, 5 *Hill*, 298.

The objection made to the allowance of interest from the 7th of May 1857, when payment was demanded, is founded on a clause contained in the 9th condition of the policy, providing for the payment of loss within sixty days after the same should be ascertained and proved. There was no dispute as to the right of the appellees, to interest after the time fixed for payment by that condition, it being an established rule that interest may be claimed from the time the principal sum becomes payable by the terms of the policy. *McLaughlin vs. Wash. Co. Mutual Ins. Co.*, 23 *Wend.*, 525. *Hallet vs. Phœnix Ins. Co.*, 2 *Wash. C. C. R.*, 279. The principle involved is the same as in cases where, by the expiration of the time limited for the payment of a principal sum, interest becomes payable for the time the sum due may be withheld; and the objection made to the allowance of interest in this case, presents the question, whether the amount to be paid on this policy, was due and recoverable on the day from which the interest allowed was computed. We have no doubt on that point. It appears from the statement of facts made by agreement of the parties, that the conditions of the policy as to preliminary proof, were complied with, and a demand of payment made on the date mentioned, and that the appellant thereupon admitted the loss, and offered payment of what it assumed to be the amount of its liability, but in fact a less sum than it was bound for, and then, denying all further obligation on the policy, refused to pay any other or larger sum.

Upon these facts we must hold that the condition as to the time of payment was waived, and that the sum for which the appellant was bound then became due and recoverable. In our opinion the allowance of interest is not open to objection.

From our examination of the whole case, we conclude

that the 1st and 2nd prayers of the appellant, and the 6th of the appellees, were properly granted, and that there was no error in the rejection of the others.

*Judgment affirmed.*