## THE PALATINE INSURANCE COMPANY, Limited, *vs.* CATHERINE T. O'BRIEN.

*Effect of Plea of Tender—Award of Arbitrators Vacated—Insurance of Rents Against Loss by Fire—Election by Assured Not to Rebuild—Delay in Rebuilding Caused by Action of Municipal Authority—Interest on Sum Due on Policy of Insurance—Prayer too General.*

When the award made by arbitrators under a policy of fire insurance has been cancelled by a Court of competent jurisdiction, it cannot be considered by the jury in an action on the policy.

When the defendant by plea tenders a certain sum in satisfaction of the plaintiff's claim, and pays the same into Court, the liability of the de-

fendant on the cause of action is thereby admitted, and the issue raised is merely as to the extent of that liability.

A policy insuring a landlord against loss of rents by fire, rendering untenantable the rented premises, provided that if the insured should rebuild or repair his property, it should be done in as short a time as the nature of the case will admit, in which event, the loss should be computed from the date of the fire to the time when the premises again become tenantable. But in case the assured should elect not to restore the premises, then the loss of rents should be determined by the time which would have been required for such restoration. Another provision of the policy was that the insurer should not be liable for any loss caused directly or indirectly by order of any civil authority. After the destruction by fire of the property, the insured elected not to restore it but put up a building of a different character. The city authorities refused building permits in that locality after the fire until certain street improvements had been decided upon. *Held,* that the contract contemplated that the insured, upon the happening of a loss, should take immediate possession of the premises.

*Held,* further, that in case the assured elected not to rebuild, the insurer agreed to pay an amount equal to the loss of rent from the date of the fire to the time when the premises could have been restored by the exercise of due diligence, but if the rebuilding was prevented by the action of the municipal authorities in refusing permits for rebuilding, the insured could not recover the rent during the period of such delay, and that evidence as to such action of the municipal authorities is admissible.

When a policy of fire insurance provides that the amount of the loss shall be payable sixty days after the furnishing of proof of loss, the insured is entitled to interest from that time on the sum found to be due.

A prayer instructing the jury that on the pleadings and evidence in the case their verdict must be for the plaintiff is too general.

*Decided January 8th, 1908.*

Appeal from the Superior Court of Baltimore City (SHARP, J.)

*Plaintiff's 2nd Prayer.*—That the measure of damages is the actual loss of such rents, if any, from the property described in the evidence, that the jury shall find that the plaintiff has sustained, not exceeding the sum insured, from the date of the fire until such time as the premises could be restored or rebuilt, as promptly as the nature of the case would admit, with interest on such rents as they may find accrued up to and after sixty days from the time proofs of loss were sub-

mitted to the defendant, if they so find such proofs of loss to have been submitted, provided the sum found shall be in excess of the amount paid into Court in this case, towit,—$1,150; and the refusal of the city authorities to allow the plaintiff to rebuild for a certain time, as set out in the evidence, if they find such refusal, is a circumstance proper to be considered in arriving at such loss of rent. (*Granted.*)

*Plaintiff's 3rd Prayer.*—That there is no evidence in this case of any arbitration and award, and no consideration shall be given to the arbitration and award set aside and declared void by the United States Circuit Court. . (*Granted.*)

*Defendant's 1st Prayer.*—There is no legally sufficient evidence that by the terms of the respective agreements between the plaintiff and the several tenants of the premises mentioned in this action the rent payable by such tenants or any of them was to cease or be suspended in case of the destruction by fire of the improvements on said premises.

And there is no legally sufficent evidence that the tenancy of such tenants or of any of them was ever terminated by such notice as is required by sections 844 to 849 inclusive of the Baltimore City Charter (1898, ch. 123.)

And accordingly such tenants were and remained liable to pay the rents agreed upon until such time as the plaintiff herself entered into possession of the premises, and there was no such actual loss of rents of said premises from the date of the fire till the plaintiff entered into possession as the defendant is liable for under its policy offered in evidence.

And, therefore, under the pleadings in this action the plaintiff is not entitled to recover for any alleged loss of rents between the date of the fire and the time when she herself entered into possession of the premises. (*Refused.*)    .

*Defendant's 2nd Prayer.*—That, under the pleadings and evidence in this action, the plaintiff is not entitled to recover for any alleged loss of rents for the period after she herself took possession of the premises in question in this case. (*Refused.*)

*Defendant's 3rd Prayer.*—The verdict of the jury, if for the plaintiff, must be limited to such an amount as is equal to the

rents of the premises in question, for such time only as would be reasonably required by a competent builder under the circumstances to erect buildings such as those that were destroyed by fire.  (*Granted as amended.*)

*Defendant's 4th Prayer.*—The defendant prays the Court to exclude from the consideration of the jury, the testimony admitted subject to exception, as the action of the city officers with regard to establishing grades and building lines on German street between Charles and Light streets, and the alleged refusal of the Building Inspector to issue permits for the erec· tion of buildings at the place in question.  (*Refused.*)

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE and WORTHINGTON, JJ.

*John J. Donaldson* (with whom was *Daniel H. Hayne* on the brief ), for the appellant.

1. By the terms of the policies it is an "actual loss" of rents that is insured against.  Apart, however, from these express terms, there could only be a recovery for such an actual loss. That a policy of fire insurance is a contract· of indemnity as said in *Dalby* v. *Ind. and London. Assurance Co.*, 15 C. B. 365, is not now a matter of discussion.

In the case at bar the tenants who were in occupation of the premises at the time of the fire were *all yearly tenants.*

There is nothing better settled than that, *unless there is a provision in the lease to that effect*, the destruction of the improvements on the premises demised does not end or suspend the tenant's liability for the rent.  *Lamott* v. *Sterett*, 1 H. & J. 42; *Hess* v. *Newcomer*, 7 Md. 237; *Gluck* v. *Balto. City*, 81 Md. 315, 322; *Leake, Uses and Profits of Land*, 97; *Baker* v. *Holtzapfel*, 4 Taunton, 45; *Same* v. *Same*, 18 Vessey, 115; *Leeds* v. *Cheetham*, 1 Simon, 146; *Izod* v. *Gorton*, 5 Bing. N. C. 501.   The rule applies as well in case of tenants by the year, as in that of tenants for a definite term, to tenants of a floor or apartment as well as to those of the whole premises. Cases last cited.   *Sauer* v. *Bilton*, L. R. 7 C. P. 815; *Manchester Warehouse Co.* v. *Carr*, L. R. 5 C. P. D. 507.

In the case at bar, the tenants were all yearly tenants, and in the agreements with them there was no provision for a cesser or suspension of the rent in case the buildings were destroyed. That their liability for the same continued is then absolutely clear.

Further than that, the plaintiff offered no evidence, whatever, of any demand on her part upon the tenants and refusal by them to pay, or even that they had not paid any rent since the fire.

The insurance of rents being of comparatively modern growth, there are but few cases dealing with it. In the case, however, of marine policies on freight (in effect the *rent* of a ship), which afford the closest analogy—marine policies being as much contracts of *indemnity* as fire policies—there is abundant authority. It has long been settled that where freight has been *earned* though not collected, or even collectible, there is no loss of the same under a policy insuring freight. *Arnould, Marine Ins.* (5 ed), 980; *Brocklebank* v. *Sugrue*, 1 Moo. and R. 102; S. C., 5 C. & P. 21; *Benson* v. *Chapman*, 2 H. L. C. 696, 723; *Everth* v. *Smith*, 2 M. and S. 278; *Scott Mar. Ins. Co.* v. *Turner*, 1 McQ. H. L. 334; *McCarthy* v. *Abel*, 5 East, 388; *Thompson* v. *Rowcroft*, 4 East, 34.

The American authorities are at one with the English. *Morgan* v. *Ins. Co. of N. America*, 4 Dall. 455; *Murray* v. *Ætna Ins. Co.*, 4 Biss. 417; *Allen* v. *Merc. Mut. Ins. Co.*, 44 N. Y. 437; *Hubbell* v. *Great West. Ins. Co.*, 74 N. Y. 246. And so this Court decided when the question came before it. *Mer. Mut. Ins. Co.* v. *Butler*, 20 Md. 41, 56.

To follow any other doctrine in the case at bar would be to apply appellant's policies in exoneration of the tenants, *entire strangers to the same*.

Nothing is better settled than that, in the absence of any contract between landlord and tenant as to insurance by one for the benefit of the other, neither has any interest in insurance taken by the other in his own interest. *Leeds* v. *Cheetham*, 1 Sim. 146; *North. Trust Co.* v. *Snyder*, 76 Fed. R. 34; S. C., 22 C. C. A. 47; *Lovett* v. *U. S.*, 9 Ct. of Claims, 479; *Home Ins. Co.* v. *Gibson*, 72 Miss. 58.

It is therefore submitted that defendant's first prayer should have been granted and plaintiff's first and second prayers refused.

2. *The Measure of Loss.* (Plaintiff's second prayer; defendant's second prayer; defendant's third prayer; defendant's fourth prayer.) Assuming, however, that the plaintiff was entitled to recover at all, what was the measure of the loss? Inasmuch as the plaintiff did not rebuild the houses as they were before the fire, but put up improvements "entirely different;" the matter is governed by the latter clause in the "form" attached to the policy, viz: "And in case the assured shall elect not to build or repair, then the loss of rents shall be determined by the time which would have been required for such other purpose;" that is to say, for the rebuilding or repair.

This is the precise measure given by defendant's third prayer as offered and refused by the Court.

The Court, however, by its rulings allowed the plaintiff to recover for loss of rents for time (1), after she herself took possession, thus evicting. tenants whose terms were still running *and whose rent was still accruing*, (2) covering delays caused by results of a general conflagration and not of the risk insured against, and (3) covering also delays caused by the action of the city authorities.

Inasmuch as the liability of the tenants for their rent still continued after the fire, it never was ended until the plaintiff's entry, when it ceased, *not by reason of the peril insured against*, but by her own act. It is clear law that under an insurance policy on rents there can be no recovery for the time when the premises are in the occupation of the assured. *Westminster Fire Office* v. *Glasgow Prov. Ins. Soc.*, L. R. 13 App. C. 699, 710, 714. It would therefore seem undoubted that defendant's second prayer should have been granted.

It is difficult to see why the plaintiff should be entitled to recover for the time covered by delays caused by obstruction of streets, etc., the results of a *general conflagration.*

The policies in this case insure against "all *direct* loss or

damage by fire.   *   *   *   To an amount not exceeding
*   *   *   dollars, to the *following described property.*"   The
whole risk assumed is that of losses caused by fire damage to
*this specific property* and not that of a general conflagration.
Of course, such an event was never in the contemplation of
the parties, nor does the language of the policies admit any
such construction.

As to time covered by alleged delays caused by action of
the city authorities, if the policies were silent, the same argu-
ment would apply—they are not risks insured against.   *Brown*
v. *Royal Ins. Co.*, 1 E. & E. 853; *Rooks* v. *Seaton*, 1 Phila. 106.

But here the policies deal directly with the matter.   They
provide that "this company shall not be liable for loss caused
directly or indirectly   *   *   *   by order of any civil au-
thority."   And further:   "Nor beyond the actual value de-
stroyed by fire for loss occasioned by ordinance or law regu-
lating construction or repair of buildings."

In view of these express terms, apart from the general
principle referred to, it would seem that defendant's fourth
prayer, excluding from the jury the evidence admitted sub-
ject to exception, should have been granted, and on the same
ground plaintiff's second prayer rejected.

The Court's modification of defendant's third prayer was
erroneous, as misleading the jury, allowing them to consider
(as part of the "circumstances") the alleged delays caused by
the results of a general conflagration and by the action of the
city authorities.

3. *The Allowance of Interest.*   (Plaintiff's second prayer.)
The Court granted the plaintiff's first prayer, which *required*
the jury to allow interest on the amount of the loss as found
by them.

It is entirely settled in Maryland that interest is only allow-
able as a *matter of right* upon contracts in writing to pay
money on a day certain or on contracts for the payment of
interest; in all other cases it is in the *discretion* of the jury.
*Newson* v. *Douglass*, 7 H. & J. 417.   That in the case of
policies of fire insurance, interest on the amount of the loss is

in the *discretion* of the jury was decided by this Court in
*Planter's Mut. Ins. Co.* v. *Rowland*, 66 Md. 243.   To *require*
its allowance in this case was clearly reversible error.

*Hyland P. Stewart,* for the appellee.

There certainly was no error in granting the first prayer of
the plaintiff for it is admitted by the pleadings that the plain-
tiff is entitled to a verdict.   In case No. 1 the defendant com-
pany paid into Court in satisfaction of the plaintiff's claims
against it *five* month's rent at $230 per month; towit, $1,150,
and the interest thereon and costs to that date.   This was for
Nos. 4 and 6.   In case No. 2 it paid in *five* month's rent at
$85 per month, towit, $425, with interest and costs to date
added.   This was for No. 8.

Under such circumstances the issue to be tried was simply
the *amount due.* ·  Payment into Court is a species of tender.
1 *Poe Pl.*, sec. 652 (3 ed); *Code,* Art. 75, sec. 20, 21; *Gamble*
v. *Sentman,* 68 Md. 76; *McCullough* v. *Hellweg,* 66 Md. 276;
*Bennett* v. *Francis,* 2 Bos. & Pul. 555.

The plaintiff's second prayer is copied from the *written* ·
conditions of insurance set out in the policies, with the excep-
tion that the jury were told that the refusal of the city author-
ities to allow the plaintiff to rebuild for a certain time as set
out in the evidence, if they found such refusal, was a circum-
stance proper to be considered in arriving at such loss of rent.
What other circumstances could be more pertinent or effective
than these?   Was she not "to rebuild in as short a time as
the nature of the case will permit?"

These policies were not *special* policies written for the pur-
pose of insuring *rents* but were the ordinary *stock fire* policies
in use by all companies for the insurance of houses and
chattels, but supposedly altered in the written portions to
suit the rent phase of the risk, though an inspection of the
policies will show that no change whatever has been made in
the printed portions of the policies to adjust them to the new
risk, as a comparison with any *stock fire* insurance printed
policy will show.   By these prayers the jury were told the
proper measure of damages was the *actual* loss of rents.

Appellant is *estopped* to make the claim set up in his first prayer, for the payment of money into Court, admits the *validity* of the cause of action and the *right* to recover something thereunder.    Also the *issue* was the *amount* only, and it was admitted at the trial below to be the sole point involved, *i. e.*, *how much was due.*

Besides the *burden of proof* was not on the appellee to show that the leases had been forfeited by the fire, or that she had no right to sue the tenants for rent of the destroyed premises. This was part of the appellant's *defense* to show that she had *actually* collected from the tenants certain monies for rent. The *conditions* of the policies were to protect the insured from an *actual loss* of rents.    The proof shows what that loss was per month.    Also that she began to rebuild them as soon as possible "for it was all in the world she had and she depended on these houses for her support."

Even if she had the *right* to sue the tenants (which the evidence does not show she had) there is nothing to show that they were *responsible.*    Even if liable, it was a liability to which the appellant would be *subrogated.    Liverpool & Great West Steamship Co.* v. *Ins. Co.*, 129 U. S. 397.

The appellant's first and second prayers taken together show the fallacy of their contentions.    The first prayers say there is no liability of the appellant from the time of the fire until the appellee took possession, because the tenants *might* have been liable under their leases for rent though the premises were destroyed; but it is conceded in these first prayers that under no circumstances would the tenants be liable for rent after the appellee took possession, presumably because the landlord cannot have possession and collect rent at the same time, the taking of possession amounting to an eviction, which would be the legal effect.    The second prayers contend that the appellant (for the same reason the tenants would be released) would also be released from liability from time possession was taken by the appellee.    Hence the two prayers taken together would argue the appellee out of her insurance, and the company out of ever having assumed any liability whatever on its policies,

for which it had collected the premiums for all the years before.  The insurance contract *requires* an immediate *eviction* of the tenants in legal contemplation.

In *Heller* v. *Royal Insurance Co.*, 177 Pa. 202, it was decided that insurance against loss of having to pay rent for building under lease while it was *untenantable* by reason of fire will cover the time during which the landlord is in possession for the purpose of rebuilding, under an agreement with the tenant that such possession shall not affect the tenant's liability for rent under the lease until the completion of the new building.

In *Hoveler* v. *Flenning*, 91 Pa. 326, the Court says: "In *Magraw* v. *Lambert*, 3 Barr (Pa.) 444, it was held that "if the landlord take possession of the ruins of his premises destroyed by fire for the purpose of rebuilding, without the consent of his tenant, it is an eviction; if with his consent, it is a rescission of the lease, and in either case the rent is suspended."

When did the appellee take possession of the premises?  Was it not immediately after the fire, for on March 25th, 1904, we find her contracting in reference to it and its debris, and she took the matter in hand at once, was trying to get a permit, &c., &c.  The terms of her policies required her to do this and to begin to rebuild as soon as the nature of the case would admit, but appellant now contends that because she *did* what the policy said she *must* do, *take possession and proceed promptly*, that she thereby has lost her right to look to the appellant for her insurance of rents, because she cannot have possession and collect the rents at the same time.

BURKE, J., delivered the opinion of the Court.

The appellee, prior to and at the time of the fire which destroyed a great part of the business section of Baltimore City on the 7th and 8th days of February, 1904, was the owner of three lots of ground located at numbers 4, 6 and 8 East German street in that city.  These lots were improved by three brick houses rented and used for business purposes.  The houses at numbers 4 and 6 East German street were

rented for two hundred and thirty dollars per month, and the one at 8 East German street was rented for eighty-five dollars per month.    All three houses were totally destroyed by the fire of that date.

The defendant company had insured the rents of these properties by two policies of insurance, and these policies were in force at the time of the fire.    An attempt was made by the assured; the appellee, to adjust and settle the amount of the loss with the defendant company, and an agreement of arbitration was entered into between her and the company, and an award was made by the arbitrators, which award the defendant has pleaded to these suits, and it has also tendered and paid into Court the amounts found to be due by the award, with interest, towit, eleven hundred and fifty dollars in one case, and four hundred and twenty-five dollars in the other, in full satisfaction and discharge of the plaintiff's causes of action.    In due course of pleading issue was joined upon the plea which set up the award, and also to the plea which tendered and paid into Court the sums found to be due by the arbitrators, the plaintiff replying to that plea that the amount tendered and paid in each case was not sufficient to satisfy her claim.

The plaintiff then filed a bill of complaint in the Circuit Court of Baltimore City for the cancellation of the award pleaded in these cases.    This case, upon suggestion of the defendant, was removed to the Circuit Court of the United States for the District of Maryland, and that Court on the 18th of May, 1906, set aside and annulled the award and declared it void, and enjoined the defendant from setting it up, or attempting to set it up in defense of any action or actions at law or in equity on these policies.    From this decree the defendant appealed to the United States Circuit Court of Appeals, and that Court on April. the 9th, 1907, affirmed the decree.    It therefore follows that the award pleaded in these cases cannot be considered, and that the third prayer offered by the plaintiff in each case which took the consideration of the award from the jury was properly granted.

Failing to reach a settlement with the defendant company, the appellee brought two suits against it in the Superior Court of Baltimore City.    The suits, by consent, were tried together, and resulted in a judgment against the defendant in each case, and from these judgments the defendant has appealed.    The record presents a single bill of exceptions in each case, these exceptions being to the rulings of the Court upon the prayers. With a slight modification which occurs in one of the plaintiff's prayers, the prayers offered by both parties are identical in each case. ·

Before considering the important questions in the case, we will determine the legal effect of the payment into Court by the defendant of the several sums mentioned in satisfaction and discharge of the plaintiff's causes of action.    This tender and payment, which constitute the fourth plea in each of these cases, were made under sections 20 and 21 of Article 75, Code 1904.    The effect of these pleas was to admit the liability of the defendant upon the causes of action, and the issue raised upon the pleas was merely as to the extent of the defendant's liability.    These sections were considered by this Court in *Gamble et al.* v. *Sentman,* 68 Md. 71, where it was said: "These sections are substantially copied from the statutes of 3rd and 4th *Willliam IV,* ch. 42, sec. 21, and the rules as to costs thereby provided.    Their object is to encourage the settlement of suits without the cost and delay of trial. They allow the defendant, except in certain actions, "to pay into Court a sum of money by way of compensation or amends," and such payment may be set up by plea.    The plaintiff then, after the money has thus been paid in, may reply by accepting the same "in full satisfaction and discharge of the action," and if he does this he may have his costs taxed, and if they be not immediately paid, he shall have judgment therefore; *or* he may *reply* that the sum paid in "is not enough to satisfy the claim of the plaintiff in respect of the matter to which the plea is pleaded, and in the event of an issue thereon being found for the defendant, the defendant shall be entitled to his costs of the suit, *and the plaintiff to so much of the sum*

*paid into Court as shall be found for him*"   *   *   *   The concluding paragraph of the law as above quoted, plainly indicates that where the plaintiff replies that the money paid in is not enough to satisfy his claim, it is the duty of the Court to hold on to the money until the issue on that replication is decided, and then to pay over to the plaintiff only so much of it as the jury may find to be due him."

The insurance of the rents on the buildings located at 4 and 6 East German street was for a sum not exceeding eighteen hundred dollars; and the other policy on the rents of the building at number 8 East German street was for an amount not exceeding a thousand and forty dollars.   The conditions in the policies, upon which the main questions in these cases arise, are identical, and are here transcribed:

$1,800.   On rents of the three-story brick tin roof building situate

1.  No. 4 & 6 East German street, extending to Wine alley, Baltimore, Md.   Owned by assured and occupied for purposes hazardous, non hazardous and extra hazardous.   Privilege to use electricity for heat, light or power.   The conditions of this insurance are: That if these premises or any part thereof, shall be rendered untenantable by fire so as to cause an actual loss of rents, to the assured, then this company shall be liable for such loss of rents, not exceeding the sum insured.   And the assured agrees to rebuild or repair said premises in as short a time as the nature of the case will admit.

Loss to be computed from the date of the fire, and to cease upon the premises again becoming tenantable, and in case the assured shall elect not to rebuild or repair, then the loss of rents shall be determined by the time which would have been required for such other purposes.   Other insurance permitted without notice until required.

2.  This company shall not be liable beyond the actual cash value of the property at the time any loss or damage occured, and the loss or damage shall be ascertained or estimated according to such actual cash value, with proper deduction for depreciation however caused, and shall in no event exceed what it would then cost the insured to repair or replace the same with material of like kind and quality; said ascertainment or estimate shall be made by the insured and this com-

pany, or, if they differ, then by appraisers, as hereafter provided; and the amount of loss or damage having been thus determined, the sum for which this company is liable pursuant to this policy shall be payable sixty days after due notice, ascertainment, estimate and satisfactory proof of the loss have been received by this company in accordance with the terms of this policy.

3. This company shall not be liable for loss caused directly or indirectly by invasion, insurrection, riot, civil war or commotion or military, or usurped power, *or by order of any civil authority.*

It was admitted that the proofs of loss were mailed to the defendant on the 31st day of March, 1904, and were received by it in due course of mail. The evidence shows that the plaintiff did not rebuild upon the property houses of the same general character and size of those insured, but instead erected upon the entire ground upon which the destroyed buildings stood a six-story office building. There is evidence in the record tending to show that the plaintiff was anxious to improve her property at once, but was prevented from doing so partly because of the ruin and devastation in the burnt district caused by the fire, and partly because of the action of the city authorities in refusing building permits until certain street improvements had been definitely decided upon. What these contemplated improvements were, which caused the delay by the city authorities, are shown quite fully by the evidence. There was evidence adduced by both parties as to the time required to reconstruct the destroyed premises.

This outline of the principal subject matter of the testimony is sufficient to enable us to dispose of the legal questions in the case. The contract is to be governed by the same principles which apply to other contracts, and as it is in its nature a contract of indemnity, it cannot be made the subject of profit by the insured. The same rules of construction which apply to other contracts apply to it. The language employed must be understood in its plain, ordinary and usual meaning, and the intention of the parties, as gathered from the language used, is to control. In *Riggin* v. *Patapsco Insurance Company,*

7 H. & J. 279, our predecessors said: "In construing a policy of insurance, the Court should give it a fair and liberal interpretation, such as, under all the circumstances of the case, appears most consonant to the intention of the parties at the time the contract was formed. The design of the assured, being to provide for themselves an indemnity against loss, from which the insurers engaged to protect them, such a construction should be placed upon their compact as, according to the understanding of the parties and the nature of the transaction, will effectuate that object."

When the clauses of the contract, which we have quoted are examined in the light of these rules of interpretation, the rights and obligations of the parties will seem to be reasonably clear and certain. The contract contemplates that the assured, in case of a destruction of the property by fire, shall take immediate p ssession of the premises.

The subject matter of the insurance is the rent of the buildings mentioned in the policies, and the loss recoverable under the policies is the direct loss of rents of the buildings caused by fire. If the premises, or any part thereof should be rendered untenantable by fire so as to cause an actual loss of rent to the insured, then the company should be liable for such loss of rent to an amount not exceeding the sum insured; and if the assured determined to rebuild he should do so "in as short a time as the nature of the case will admit," and in this event the loss of rent should be computed from the date of the fire, and should cease when the premises again became tenantable. But the contract does not *oblige* the insured to rebuild, or repair. In case he should elect not to rebuild or repair (and in this case the insured did elect not to rebuild under the provisions of the policy), the insurer agreed to pay an amount equal to the loss of rents which the insured would have sustained from the date of the fire to the time said premises could have been rebuilt, and this time was to be as short as the nature of the case would admit. Had there been no other provision in the policy any loss of rent occasioned by the action of the city authorities in delaying the rebuilding of the premises would

have been recoverable under the policies, but the clause, which
we have transcribed, expressly forbids such a recovery.    The
jury, therefore, should have been instructed that the plaintiff
could not recover for rent for the time she was prevented from
rebuilding by the action of the city.

Objection is made to the action of the Court in directing the
jury to allow interest after sixty days from the time the proofs of
loss were submitted to the defendant.    We have seen that by the
terms of the policy the amount due by the defendant was payable
after sixty days from the furnishing of the proofs of loss.    Un-
der these circumstances, the plaintiff was entitled to interest
from that time upon the sum found to be due by the jury.    In
*Baltimore Fire Insurance Company* v. *Loney*, 20 Md. 40, where
the question of the plaintiff's right to interest was under con-
sideration, the Court said: "There was no dispute as to the
right of the appellees to interest after the time fixed for pay-
ment by that condition, it being an established rule that in-
terest may be claimed from the time the principal sum be-
comes payable by the terms of the policy."

The jury was not properly instructed by the plaintiff's sec-
ond prayer as to the legal effect of the delays caused by the
city to rebuilding in the burnt district as shown by the evi-
dence.    Instead of telling the jury, as the instruction did, that
the refusal of the city authorities to allow the plaintiff to re-
build for a certain time "was a circumstance proper to be con-
sidered" in arriving at the loss of rents, they should have been
told not to allow for any loss of rent for such time.    With this
modification, under the facts in the record, and the elimination
of the words "as they may find accrued up to and" from the
prayer it would have been free from objection.    For the same
reason the defendant's third prayer, as modified, should not
have been granted.

Had there been evidence that the appellee delayed taking
possession of the premises after the fire, the proposition
asserted in the defendant's first prayer that there could be no
recovery for loss of rent which may have accrued between
the date of the fire and the time when she entered into pos-

session, would have been sound, because such a loss was not covered by the policy.   But there was no evidence to support this prayer.   There is nothing to show that Mrs. O'Brien did not take immediate possession of the property, and in the absence of evidence to the contrary the presumption is that she discharged her obligations under the contract.   The defendant's second and third prayers are not in accordance with our interpretation of the contract, and were properly refused.

The evidence sought to be excluded by the defendant's fourth prayer was, for the reasons we have stated, properly in the case, and there was no error in refusing that prayer.

The plaintiff's first prayer, which told the jury that under the pleadings and evidence in this case their verdict must be for the plaintiff, was too general and indefinite, and should not have been granted.   For error committed in granting the plaintiff's first and second prayers in each case, and in granting in each case the defendant's third prayer as modified, the judgment in each case must be reversed.

> *Judgments reversed, and new trials awarded, the appellee to pay the costs.*