I. P. TITUS, proponent, *vs.* HENRY F. GAGE, contestant.

May Term, 1896.

Present: TAFT, ROWELL, TYLER, MUNSON, START and THOMPSON, JJ.

*Order of Evidence Discretionary—Remark not Ruling—Intemperance of Parent as Evidence of Insanity of Child—Reputation Admissible of Persons Charged by Testatrix with Theft—Rebuttal—Limits of Cross-examination.*

It was a wise exercise of the court's discretion to permit the proponent to introduce in rebuttal evidence, inadvertently omitted in the opening, to identify the legatee.

A criticism by the court upon counsel's use of a scientific term, interposed by way of remark, not of ruling, is not the subject of exception.

An offer to show that the father of the testatrix was in early life a man of intemperate habits, was not, standing alone, admissible, as tending to prove insanity in the testatrix.

A restriction upon testimony, even if improperly imposed, is no ground for reversal, when the restriction is disregarded by the witness.

The contestant, in support of his claim that the testatrix was subject to insane delusions, showed that she accused her neighbors of theft. *Held*, that the contestant was entitled to show further that they were reputed to be honest people.

It is discretionary with the court to say how far cross-examination may be pursued upon collateral matters for the purpose of discrediting the witness.

The proponent in his opening improved as a witness the testatrix's attending physician who testified generally as to her capacity. In

rebuttal he recalled the same witness as an expert. *Held,* that the contestant was entitled to cross-examine the witness fully in his new character.

A witness for the contestant testified that the testatrix surrendered a secured note for an unsecured note against the same debtor. Upon cross-examination he admitted that the unsecured note was good. Upon re-examination the contestant, undertaking to show the contrary, was met by the statement of the witness that the maker had property, and thereupon proposed to inquire what the property was, with a view to showing that it was exempt. The inquiry was prohibited. *Held,* error.

APPEAL from a judgment of the Probate Court for the District of Caledonia admitting to probate an instrument as the last will of Lydia P. Fuller. Objections, incapacity and undue influence. Trial by jury at the December Term, 1895, *Ross,* C. J., presiding. Verdict and judgment for the proponent. The contestant excepted.

The contestant, having introduced evidence that the sister of the testatrix had been insane, propounded a question to an expert witness upon the supposition that there was hereditary insanity in the family. The proponent objected, and the court remarked that "there was nothing to show that there was insanity back in the line," adding, "It is not proper to speak of it as hereditary; it was developed in her sister." The contestant inquired, if the court so ruled as a matter of law; to which the court replied, that it was not making a ruling, but merely stating its understanding of the strict meaning of the term.

The questions referred to in the opinion as having been put to the witnesses Dutton and Houston were as follows: To the witness Dutton: "Something has been said about her stories. What do you say about their improbability or impossibility on that line?" To the witness Houston, "Whether or not you understood the statements made by Miss Fuller, relative to these matters of her property and her neighbors, were improbable and impossible?" And further, "What is Mr. Wheatley's character?" Mr. Wheatley was one of the neighbors who was said to have been.

accused by the testatrix of theft. The questions were excluded.

Taylor & Dutton and B. E. Bullard for the contestant.

Evidence of Mr. Wheatley's character should have been admitted. *Burkhart* v. *Gladish*, 123 Ind. 337; *Cook* v. *Parham*, 24 Ala. 21; *Foster's Exrs.* v. *Dickerson*, 64 Vt. 233; *Frary* v. *Gusha*, 59 Vt. 257.

W. P. Stafford for the proponent.

MUNSON, J. The testatrix left five dollars to the contestant, her sole heir-at-law, and the remainder of her property to the "Old Ladies' Home" in St. Johnsbury. There was no institution of that name in existence, and the proponent failed to show in his opening what institution was intended. In this situation of the case, it was within the discretion of the court, and a wise exercise of its discretion, to permit the proponent to make good the oversight at the close of his rebuttal.

The contestant excepted to what the court said during the introduction of testimony in regard to the use of the term "hereditary insanity;" but the court expressly said that its suggestion was with reference to the exact application of the term, and that no ruling upon the subject was intended. This being the case, it is not important to consider the correctness of the view expressed.

The offer to show that the father of the testatrix was in early life a man of intemperate habits, without any further offer being made in connection with it, was properly excluded. The connection between the intemperance of the parent and the insanity of the child is not so obvious and well recognized as to make evidence of the one admissible in proof of the other without the support of medical testimony upon the subject.

If it was error to restrict the testimony of McKnight as the court attempted to do, the error cannot avail the

contestant, for the witness ignored the restriction and answered as to the whole matter.

The questions asked of the witnesses Dutton and Houston were properly excluded, but the contestant was entitled to show the fact which the examination was apparently designed to elicit. The contestant claimed that the testatrix was subject to insane delusions, and that among the delusions entertained was a belief that certain neighbors had stolen some of her property. To characterize this belief as an insane delusion, it was necessary to show, not only that the facts involved were not as the testatrix believed, but that the situation was such that a sane person would not have entertained the belief. So the contestant could not be confined to proof that the persons accused by the testatrix had not milked her cows in the pasture nor stolen hay from her barn. They might not have done this, and yet their reputation might have been such that it was perfectly reasonable to suspect them of it. The contestant was entitled to show that the neighbors whom the testatrix believed to have stolen her property were reputed to be honest people.

Dr. Darling, a local physician in general practice, who had known the testatrix and attended her in sickness, was called by the proponent in his opening, and gave testimony as to the mental capacity of the testatrix, based upon what he knew of her personally. In rebuttal, the proponent used this witness as an expert, and in the course of the examination asked him to tell what experience he had had with insane people, whereupon the witness "gave an account of his experience with cases of insanity." In cross-examination the contestant asked the witness if he had been called to see a certain person, and proposed to inquire whether he examined her with reference to insanity, and whether her case was one of monomania. The manner in which the case was referred to, by the examiner would indicate that it was not a case mentioned by the

witness in his direct testimony, and if this was the fact it was not error to exclude the inquiry. It is for the court to determine in its discretion how far a party shall be allowed to inquire into collateral matters for the purpose of discrediting the witness.

In the cross-examination of this witness the contestant asked whether there are certain periods in the life of a woman when she is more subject to derangement of the mind than at others, and claimed the right to ask this and like questions to test the capacity of the witness as an expert. The court refused to allow this, saying that this examination of the witness should have been made when he was upon the stand before. We think this was error. The witness was not used as an expert when first upon the stand. His opinion evidence at that time was only such as might have been given by any one who had had an opportunity of observing the testatrix. When produced as an expert, and inquired of as to his opinion upon the facts testified to by others, he stood in an entirely different relation to the case. The contestant was then entitled to test the witness's capacity as an expert by a proper cross-examination. He was clearly entitled to do this by any examination which kept within the facts relating to the testatrix as already disclosed by the evidence. The testatrix was a woman of advanced years, and there was evidence tending to show that women are more than ordinarily liable to mental derangement at the change of life, and that a marked alteration was observed in the testatrix's manner and conduct about that time. The proposed cross-examination did not extend to collateral matters, and its exclusion was the denial of a legal right.

It was not error to exclude the inquiry in regard to the street in which the pipe complained of by the testatrix was located. The fact that she said her neighbor opposite had procured the pipe to be laid on her side of the street instead of his, even if supplemented by evidence that his side of the

street was the best location for it, would not have been evidence tending to show insanity.

The contestant introduced one Crandall, who testified that the testatrix at one time released a part of a debt secured by mortgage and took an unsecured note for the amount released. The proponent then drew from the witness the statement that the note taken was a good note, and in redirect the contestant undertook to show the contrary, and was met by the statement that the maker had property. The contestant then proposed to inquire what the property was, apparently with a view of showing that it was exempt, but he was interrupted by the court in making his statement, and the evidence was excluded. The size of the note may have made this a matter of little weight, but, in strictness, the contestant was entitled to pursue the inquiry.

Considerable discussion was had in regard to the introduction of evidence concerning the disposition of the property left by the testatrix's father, and a ruling was made limiting the contestant's offer in that behalf. This offer was apparently so inconsistent with facts elsewhere presented in the exceptions that we are in doubt as to just what the contestant expected to show, and so do not deem it advisable to pass upon the exception taken.

*Judgment reversed and cause remanded.*